# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**June 27, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**STONEWALL JACKSON MEMORIAL HOSPITAL CO.,**
**Applicant Below, Petitioner**

**vs.)  No. 22-ICA-147** (CON File No. 21-7-12157-H)

**ST. JOSEPH'S HOSPITAL OF BUCKHANNON, INC. d/b/a ST. JOSEPH'S HOSPITAL,**
**Respondent Below, Respondent**

**and**

**WEST VIRGINIA HEALTH CARE AUTHORITY,**
**Respondent**

## MEMORANDUM DECISION

Stonewall Jackson Memorial Hospital Co. ("Stonewall") appeals a June 13, 2022, West Virginia Health Care Authority (the "Authority") decision denying Stonewall's Certificate of Need ("CON") application to construct and relocate to a new hospital building.[1] Respondents each filed a timely response. Stonewall filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' oral and written arguments, the record on appeal, and applicable law, this Court finds no substantial question of law, no prejudicial error, and no abuse of discretion. For these reasons, a memorandum decision affirming the Authority's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Stonewall is a 70-bed acute care hospital located in Weston, Lewis County, West Virginia. Stonewall is currently located on U.S. Route 33, 4.1 miles off exit 99 of Interstate 79. On September 13, 2021, Stonewall filed an application with the Authority, seeking a CON to construct and relocate to a new hospital facility. Stonewall planned to move its existing facility and construct a new, 29-bed facility, just east of exit 99 on Interstate 79,

---

[1] Petitioner is represented by Thomas G. Casto, Esq. Respondent St. Joseph's Hospital of Buckhannon, Inc. d/b/a St. Joseph's Hospital is represented by James W. Thomas, Esq. and Alaina N. Crislip, Esq. Respondent West Virginia Health Care Authority is represented by Heather A. Connolly, Esq.

4.2 miles from the existing facility. Stonewall proposed this new project because its existing facility was over 50 years old, outdated according to current building codes and construction standards, and was no longer suited to meet the current or future demands of a modern hospital and the healthcare needs of the community. Stonewall asserted that the same inpatient and outpatient services it provided at the time of its CON application would continue to be provided through this new project in a more modern and accessible fashion. The new facility was designed to provide more outpatient services than inpatient services, in accordance with current health care delivery methods. Stonewall also reasoned that it chose the proposed location site because of its proximity to Interstate 79 and because the land was more economically developed than other possible locations in terms of infrastructure and, therefore, was more cost effective and provided superior access. The estimated capital expenditure of the proposed new facility was $55,950,000.00.

On October 14, 2021, Respondent, St. Joseph's Hospital of Buckhannon, Inc. d/b/a St. Joseph's Hospital ("St. Joseph's"), requested that the Authority grant it "affected party" status pursuant to West Virginia Code § 16-2D-2(1)(E) (2017),[2] asserting that it would be significantly affected by Stonewell's proposed project. St. Joseph's also requested an administrative public hearing on Stonewall's CON application, which was held on January 25, 2022.

At the hearing, St. Joseph's argued that Stonewall's proposed project was not the superior alternative, as required by West Virginia Code § 16-2D-12(b)(1) (2016), primarily because of its impact on St. Joseph's status as a critical access hospital ("CAH"). St. Joseph's explained that it has had CAH status since 2014, which allows it to be reimbursed on a cost-basis for providing service to Medicare and Medicaid patients, as opposed to reimbursement on a prospective payment basis.

St. Joseph's is located in Upshur County, West Virginia, 12 miles from Stonewall's proposed new location; however, a requirement of its CAH designation is that the hospital cannot be located closer than 15 mountainous terrain miles from another hospital.[3] *See* 42 U.S.C § 1395i-4 (2010). St. Joseph's argued that Stonewall's proposed project would cause St. Joseph's to lose its CAH designation. St. Joseph's offered testimony that losing its CAH status would have a disastrous effect on the hospital because prior to its CAH status, it operated as a prospective payment system hospital and struggled financially, and, once it

---

[2] We note that a new, revised edition of this statute was promulgated in March of 2023; however, these revisions do not change the outcome of this decision.

[3] Under federal requirements, a CAH generally cannot be located closer than a 35-mile drive from another facility. 42 U.S.C § 1395i-4(c)(2)(B)(i) (2010). However, there is an exception that a CAH cannot be located closer than a 15-mile drive from another facility in the case of mountainous terrain. *Id.*

received this status, it became financially viable. However, Stonewall argued that replacing and relocating its existing hospital was the superior alternative to maintaining the status quo, renovating the existing facility, and replacing the existing operating rooms because the proposed project construction and relocation would best meet the community's healthcare needs.

Stonewall's proposed construction and relocation are subject to the Authority's CON review process. *See* W. Va. Code § 16-2D-3(a)(1) (2017).[4] The Authority may not grant a CON unless, "after consideration of the appropriateness of the use of existing facilities within this state providing services similar to those being proposed," the Authority finds "[t]hat superior alternatives to the services in terms of cost, efficiency and appropriateness do not exist within this state and the development of alternatives is not practicable." W. Va. Code § 16-2D-12(b)(1) (2016).

On June 13, 2022, the Authority issued a written decision denying Stonewall's application for construction of the new facility, finding that Stonewall "failed to demonstrate that superior alternatives to the services in terms of cost, efficiency and appropriateness do not exist within this state and the development of alternatives is not practicable as required by W. Va. Code § 16-2D-12(b)(1)." First, the Authority found that Stonewall did not meet its burden of demonstrating that superior alternatives do not exist, holding that:

> [w]hile the proposed project may be the superior alternative in terms of cost, efficiency, and appropriateness as it relates to Stonewall, the review of the project does not end with the Applicant. The Authority must also determine whether the proposed project is the superior alternative as it relates to an Affected Person and the citizens of the State of West Virginia. *See* W. Va. Code § 16-2D-1.

The Authority reasoned that it is undisputed that, if Stonewall moved to the proposed location, St. Joseph's would lose its CAH status, and the evidence of record shows that losing CAH status would have a significant detrimental financial effect on St. Joseph's. Second, the Authority found that Stonewall did not meet its burden of proving that the development of alternatives was not practicable. The Authority reasoned that "Stonewall admitted it had not explored other sites for the project," and it "produced no evidence that

---

[4] Additionally, we note that, in March of 2023, the West Virginia Legislature changed certain circumstances under which a CON is needed and added certain exemptions to CON applications under the code. *See* W. Va. Code §§ 16-2D-2, -8, -10, -11 (2023). However, we will not analyze what effect these changes would have on Stonewall's CON requirement, if any, because the case at hand was decided and appealed before such changes became effective.

it had completed a market analysis of the surrounding area to determine if any other suitable property might exist." Further, in its conclusion of law, the Authority concluded that "[s]uperior alternatives to the proposed project do exist," but it did not identify them. On July 8, 2022, Stonewall filed a request for review of the Authority's decision with the Office of Judges, which we consider in this appeal.[5,6]

"The specific standard of review both for the Office of Judges and, on appeal therefrom . . . is set forth in West Virginia Code § 29A-5-4(g)." *Amedisys W. Va., LLC v. Pers. Touch Home Care of W. Va., Inc.*, 245 W. Va. 398, 407, 859 S.E.2d 341, 350 (2021). West Virginia Code § 29A-5-4(g) (2021) provides:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the agency;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

On appeal, Stonewall asserts one assignment of error: the Authority erred in finding that the proposed project was not the superior alternative and that Stonewall did not prove that development of alternatives is not practicable. Stonewall contends: (1) the Authority incorrectly relied on West Virginia Code § 16-2D-1 (2017);[7] (2) the Authority misapplied

---

[5] This case is an appeal to this Court even though the decision of the Authority was entered prior to June 30, 2022. However, because the Office of Judges did not decide this case prior to its dissolution on September 30, 2022, the matter was transferred to this Court for decision pursuant to West Virginia Code § 16-2D-16a(b) (2021).

[6] On July 29, 2022, St. Joseph's filed a motion to dismiss this matter in the Office of Judges regarding the service of Stonewall's Request for Appeal. This motion was still pending when the matter was transferred to this Court. On November 4, 2022, this Court issued an order denying St. Joseph's motion to dismiss.

[7] On appeal, Stonewall argues that the Authority improperly cited West Virginia Code § 16-2D-1 in its decision as to whether the proposed project was the superior

West Virginia Code § 16-2D-12(b)(1) (2016); and (3) the Authority failed to take into account all evidence in making its decision. St. Joseph's also asserts one assignment of error on appeal, contending that the Authority's decision erroneously determined that Stonewall's application was consistent with the Accessibility Standard set forth in the State Health Plan Standards for the Renovation-Replacement of Acute Care Facilities and Services.[8]

## A. Stonewall's Assignment of Error

Stonewall argues that the Authority misapplied West Virginia Code § 16-2D-12(b)(1) (2016) by placing an additional burden on Stonewall to complete a market analysis. Stonewall asserts that there is nothing in the statute requiring a market analysis to be performed in order to demonstrate that there are no superior alternatives. Further, Stonewall asserts that it provided evidence that it reviewed other alternatives. In response, St. Joseph's argues that the Authority has a statutory basis to require a CON applicant to objectively establish that it has considered alternatives and has sufficiently established that no alternatives are practicable, whether that be by market analysis or otherwise. St. Joseph's asserts that Stonewall simply presented no evidence at all. The Authority also argues that Stonewall only provided anecdotal evidence that some sites suggested by St. Joseph's were not practicable, but Stonewall did not provide any evidence that it attempted to investigate any alternatives other than the proposed location, which was purchased by Stonewall in 2017, 5 years before submitting its application. Additionally, the Authority argues that it made no determination that the sites suggested by St. Joseph's were appropriate, but it simply recognized that Stonewall had the burden of proving that the development of alternatives was not practicable and that it failed to meet that burden. We agree with St. Joseph's and the Authority.

In reviewing the Authority's decisions, this Court must give deference to the agency's analysis of relevant factors. The factfinding determinations of an agency are entitled to deference unless clearly wrong.

---

alternative because this code section gives no support to its findings. The Authority argues that the citation to that code section was a typographical error, and it meant to cite to West Virginia Code § 16-2D-12 (2016). We agree with the Authority that this was likely a typographical error and did not substantially prejudice Stonewall's rights under West Virginia Code § 29A-5-4(g) (2021).

[8] We note that, because Stonewall and St. Joseph's briefs were not originally filed before this Court, but rather before the Office of Judges, they do not contain specific assignments of error as required by the Rules of Appellate Procedure. We also note the length of the Authority's decision is 41 pages and the volume of the record on appeal exceeds 3,500 pages.

> [Where] an appellate court [is] charged with reviewing the decision of an administrative agency's factfinder . . . the [appellate] court is required to accord deference to the hearing examiner's findings of fact unless they are "[c]learly wrong in view of the reliable, probative, and substantial evidence on the whole record[.]"

*W. Va. State Police v. Walker*, 246 W. Va. 77, 84, 866 S.E.2d 142, 149 (2021) (quoting W. Va. Code § 29A-5-4(g)(5)); *see also* Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, S.E.2d 518 (1996). Further, the Supreme Court of Appeals of West Virginia has specifically held, "[T]he Legislature has delegated matters involving public health to the Authority, see [West Virginia Code] § 16-2D-1 to -20, which has the institutional expertise needed to resolve difficult issues of public health and citizens' access to public health services." *Amedisys W. Va.*, 245 W. Va. at 414, 859 S.E.2d at 357.

Based upon a review of the record and the deference given to the Authority because of its institutional expertise, we find no error in the Authority's determination that Stonewall did not provide sufficient evidence to show that superior alternatives do not exist and that the development of alternatives is not practicable. Stonewall failed to provide any independent evidence that it explored various alternatives and simply attempted to counter St. Joseph's suggestions for alternatives. Stonewall also presented no evidence from experts or otherwise that alternative locations do not exist that would not affect St. Joseph's CAH status. As noted by the Authority, Stonewall's CEO even testified that "Stonewall had not explored other sites for the project than the proposed location." Additionally, the Authority did not require Stonewall to do a market analysis but simply indicated that Stonewall needed to do something more to prove that superior alternatives did not exist and that the development of alternatives was not practicable. Therefore, we hold that the Authority did not err in finding that Stonewall did not meet its burden of proving that superior alternatives to the services in terms of cost, efficiency, and appropriateness do not exist and that the development of alternatives is not practicable under W. Va. Code § 16-2D-12(b)(1) (2016).

Additionally, the Authority determined that Stonewall's proposed project was the superior alternative as to Stonewall, but Stonewall did not meet its burden of proving that there was not a superior alternative overall, including as it related to the affected party, St. Joseph's, and the citizens of this state. Stonewall argues West Virginia Code § 16-2D-12(b)(1) (2016) does not give the Authority the ability to consider whether the proposed project is the superior alternative as it relates to affected persons and the citizens of the State. We disagree and find that a balanced review under the statute would necessarily and logically include a thorough analysis of whether the proposed project was the superior alternative as to the applicant, the affected parties, and the citizens of West Virginia. The statute requires the Authority to consider whether the proposed project is the superior alternative for services "in terms of cost, efficiency and appropriateness." W. Va. Code § 16-2D-12(b)(1) (2016). Although the statute does not specify as to whom the proposed

6

project must the superior alternative—the applicant, the affected person(s), or the citizens of West Virginia—the statute is broadly stated. Therefore, we find, it is reasonable to conclude that the standard and burden is to prove that no superior alternative exists in terms of cost, efficiency, and appropriateness overall, which means as to all three in this case. This is consistent with the Board's decision, and we find no error.

We also note that, to the extent the interests of all three (applicant, affected parties, and citizens of West Virginia) do not fully coincide, which is often the case, the Authority must reasonably weigh the evidence as to each and balance their conflicting interests to determine if a superior alternative does not exist. This principle is recognized, implicitly and expressly, by both Stonewall and St. Joseph's in their briefs. Stonewall argued that the Authority must conduct a balanced review as to both the applicant and the affected party.[9] St. Joseph's argued that the Authority would have committed clear error if it did not consider the proposed project's effect on the affected party and the citizens of West Virginia because of the legislative intent behind the statute.[10] In that regard, Stonewall failed to present sufficient meaningful evidence to overcome the adverse effect on St.

---

[9] *See* Stonewall Br. 11–13. Stonewall argues that the Authority focused primarily on the project's impact on St. Joseph's, and a balanced review would have also focused on the new facility and its location and easy access for patients.

[10] St. Joseph's cited West Virginia Code § 16-2D-1 (2017), which provides:

> It is declared to be the public policy of this state:
>
> (1) That the offering or development of all health services shall be accomplished in a manner which is orderly, economical and consistent with the effective development of necessary and adequate means of providing for the health services of the people of this state and to avoid unnecessary duplication of health services, and to contain or reduce increases in the cost of delivering health services.
>
> (2) That the general welfare and protection of the lives, health and property of the people of this state require that the type, level and quality of care, the feasibility of providing such care and other criteria as provided for in this article, including certificate of need standards and criteria developed by the authority pursuant to provisions of this article, pertaining to health services within this state, be subject to review and evaluation before any health services are offered or developed in order that appropriate and needed health services are made available for persons in the area to be served.

*See* St. Joseph's Br. 23–25.

Joseph's. This is not to say that St. Joseph's or any affected party has "veto" power over a proposed project and related CON application.

Further, the impact and effect of this type of analysis and CON decision on the citizens of the state are key factors that may, in a given case, determine the issue or tip the scale one way or the other. Certainly, it is difficult to see how an investment of $56,000,000 to construct a new, modern hospital facility, designed to fit current healthcare needs of the community with easy access off a major interstate—thereby providing services to citizens of not only Lewis and Gilmer County, but also to Upshur County residents and residents of numerous other counties in proximity—would not be of great value and benefit to the citizens of West Virginia. That said, there is no dispute on the significant adverse impact of the proposed project on St. Joseph's. Yet, even recognizing the practical difficulty of proving a negative,[11] Stonewall simply did not present sufficient evidence to establish that superior alternatives do not exist and that the development of alternatives is not practicable as to both Stonewall and the citizens of the State. If Stonewall had provided, or if in the future it provides additional evidence sufficient to establish that no superior alternative to the project exists and that the development of superior alternatives is not practicable, the result may have been or be different in that the adverse harm to St. Joseph's may not be sufficient to doom the project.

Stonewall also argues that the Authority misapplied the statute by finding that the proposed project's location, and not the services to be provided, would impact St. Joseph's. We disagree. The Authority must consider whether the proposed project is the superior alternative as "to the services in terms of cost, efficiency and appropriateness," under West Virginia Code § 16-2D-12(b)(1) (2016); it logically follows that the project's location is relevant as to all three of these factors. Therefore, we find no error in the Board's interpretation of the statute.

Stonewall further argues that the Authority failed to review the facts of the record as a whole, asserting that a more thorough review by the Authority would have focused on

---

[11] A CON applicant must prove "[t]hat superior alternatives to the services in terms of cost, efficiency and appropriateness do not exist within this state and the development of alternatives is not practicable." Both of these elements are negatives. Admittedly, it can be difficult at times to prove a negative, but that is the standard and burden of proof required by the applicable statute. However, a CON applicant can meet this burden to prove no superior alternatives by showing that it made efforts to look for other alternatives and analyzed the issues and problems with those alternatives. Further, although affected parties are not required to challenge the applicant's suggestion, affected parties generally present superior alternatives. Thus, the applicant may also show the issues and problems with those suggested alternatives.

more than St. Joseph's loss of CAH status. In its discussion, the Authority specifically found that:

> Stonewall asserts that it chose the proposed site because it was near the Route 33/Interstate 79 intersection and because the land was more economically developed than other locations in the county. Stonewall bought one parcel of land in this area in the 1990s and another in 2017. Both parcels are within 15 miles of [St. Joseph's]. [St. Joseph's] became a CAH hospital in 2014. Consequently, Stonewall bought this second parcel of land knowing it was within 15 miles of a CAH.

Our discussion and decision should not be interpreted as an indication of this Court (and of the Authority) of a preference of the needs of one hospital over the needs of another hospital, or that St. Joseph's has the power to "veto" any proposal for relocation and redesign submitted by Stonewall. Simply, under the limited facts and circumstances of this particular case, Stonewall did not provide sufficient evidence to satisfy its burden. Based on our consideration of the record as a whole; the credibility determination of the Authority and the deference due the same; and applicable law, we find no error.

## B. St. Joseph's Assignment of Error

On appeal, St. Joseph's also asserts one assignment of error, arguing that the Authority erred in determining that Stonewall's application was consistent with the Accessibility Standard set forth in the State Health Plan Standards for the Renovation-Replacement of Acute Care Facilities and Services. The Accessibility Standard requires:

> The proposal shall not adversely affect the continued viability of an existing hospital or health care services that serves a population of at least 10,000 not having 30-minute access to another hospital or critical access hospitals (CAH).[12]

Here, the Authority found in its decision that "critical access hospital" in this Standard means "30-minute access to a critical access hospital." St. Joseph's contends that the standard creates two distinct and protected classes: (1) an existing hospital not having 30-minute access to another hospital, and (2) CAHs. Thus, St. Joseph's believes the

---

[12] W. Va. Health Care Auth., CON Standards: Renovation-Replacement of Acute Care Facilities and Services, (June 2, 2010), https://hca.wv.gov/certificateofneed/Documents/CON_Standards/RenovAcute.pdf.

9

Standard provides that the proposed project cannot adversely affect the viability of a CAH. We disagree.[13]

> Where the State Health Plan Home Health Services Standards were promulgated by the West Virginia Health Care Authority (formerly the West Virginia Health Care Cost Review Authority) pursuant to a legislative grant of authority, West Virginia Code §§ 16-2D-1 to -20 (2016 & Supp. 2020), authorized by the Governor, and formally adopted and given full force and effect by the Legislature, *see id.* § 16-2D-6(g), the longstanding, consistent interpretation of those Standards by the West Virginia Health Care Authority, being neither arbitrary nor capricious, is entitled to judicial deference pursuant to *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Syl. Pt. 5, *Amedisys West Virginia, LLC*, 245 W. Va. 398, 859 S.E.2d 341. Because the Authority promulgated the Standard at issue pursuant to its legislative authority, we give deference to its interpretation of the Standard. Therefore, we find no error.

Accordingly, we affirm the Authority's June 13, 2022, decision.

Affirmed.

**ISSUED:** June 27, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

---

[13] St. Joseph's conceded in its brief that its assignment of error may be harmless error at this stage of the proceedings but asserts the same to preserve its rights on appeal.